UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RANDY J. HARTZELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:14-cv-1367-WTL-MJD |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Randy J. Hartzell requests judicial review of the final decision of Defendant Carolyn Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Hartzell filed his application for DIB and SSI in October 2011, alleging disability beginning in September 2011 due to bilateral knee pain, arthritis, insomnia, hypertension, proteinuria, and high blood pressure. His application was denied initially and upon reconsideration, whereupon he requested and was granted a hearing before an administrative law judge ("ALJ"). Hartzell was represented by counsel at the hearing, which was held on March 12, 2013, before ALJ Tammy Whitaker. Hartzell and a vocational expert testified at the hearing. Thereafter, on May 3, 2013, the ALJ rendered her decision in which she concluded that Hartzell was not disabled as defined by the Act. After the Appeals Council denied Hartzell's request for review of the ALJ's decision, he filed this timely action for judicial review.

## II. EVIDENCE OF RECORD

The evidence of record is aptly set forth in the parties' briefs. Specific facts are set forth in the discussion section below where relevant.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. ' 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. ' 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. ' 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. ' 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. ' 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20

---

[1]The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

C.F.R. ' 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. ' 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Id.*

## IV. THE ALJ'S DECISION

The ALJ found at step one that Hartzell had not engaged in substantial gainful activity since his alleged onset date of September 15, 2011. At steps two and three, the ALJ found that Hartzell had the severe impairments of osteoarthritis of the knees bilaterally, history of knee pain, lower extremity edema and peripheral edema, obesity, history of synovitis, history of insomnia, and hypertension, but that his impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Hartzell had

> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: lift and carry ten pounds occasionally and five pounds frequently; stand and walk in combination two hours per eight-hour day; sit six hours per eight-hour day; at one time, only sit thirty minutes, stand

>thirty minutes, and walk thirty minutes; limited to work allowing the individual to sit or stand alternatively; never any foot control operation; never climbing ladders, ropes, scaffolds, or stairs; never kneeling, crouching, or crawling; occasionally climbing ramps; occasionally balancing or stooping; no exposure to vibration; no exposure to unprotected heights or dangerous machinery; and limited to work that allows the individual to be off task five percent of the day, in addition to regularly scheduled breaks.

Record at 22. Given this residual functional capacity ("RFC"), the ALJ determined that Hartzell was not able to perform his past relevant work as a house mover helper and a carpet layer helper. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Hartzell could perform, including table worker, eyeglass assembler, and paramutual ticket checker. Accordingly, the ALJ concluded that Hartzell was not disabled as defined by the Act.

## V. DISCUSSION

Hartzell argues that the ALJ erred in several respects. Each of his arguments is addressed, in turn, below.

Hartzell argues that the ALJ's finding at step 3 that his condition does not meet or equal Listing 1.02(A) is incorrect. As the claimant, Hartzell "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Hartzell argues that the record contains evidence that satisfies this burden, but the ALJ failed to recognize that fact.

Listing 1.02(A) is the listing for major dysfunction of a joint due to any cause, which is

>[c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

4

It also requires "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively." Listing 1.00(B)(2)(b), in turn, provides:

> b. What We Mean by Inability to Ambulate Effectively
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The Court agrees that the ALJ's analysis regarding Listing 1.02 is inadequate. Indeed, she provides no analysis at all; rather, she simply lists the requirements of the listing and concludes that the evidence of record does not establish that Hartzell meets or equals them. As the Seventh Circuit noted in *Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015):

> This is the very type of perfunctory analysis we have repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing. *See Kastner v. Astrue,* 697 F.3d 642, 647–48 (7th Cir. 2012) (remanding where the ALJ's cursory Listing analysis failed to articulate rationale for denying benefits when record supported finding in claimant's favor); *Barnett,* 381 F.3d at 670 (concluding the ALJ's "two-sentence consideration of the Listing of Impairments [was] inadequate and warrant[ed] remand."); *Brindisi v. Barnhart,* 315 F.3d 783, 786 (7th Cir. 2003) (reversing because ALJ's Listing analysis was "devoid of any analysis that would enable meaningful judicial review.").

5

Just as in *Minnick*, the ALJ in this case dismissed the possibility of Hartzell's knee impairments meeting or equaling Listing 1.02's criteria "in two sentences. Beyond these two sentences, she provided no analysis whatsoever supporting her conclusion." *Id.* at 936.

This error would be harmless if Hartzell were unable to point to evidence that would support a finding that his condition meets or equals the listing. That is not the case, however. Listing 1.02(A) requires "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability)." A September 2012 x-ray of Hartzell's knees found "at least 17 mm of later subluxation of the tibia in relation to the femur" in the right knee and "at least 8 mm of lateral subluxation of the tibia in relation to the femur" in the left knee. R. at 238. The Listing also requires "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." The same x-ray showed "severe medial joint space narrowing with bone-on-bone articulation" in Hartzell's right knee and "severe medial joint space narrowing with bone-on-bone articulation" in his left knee. *Id.* Hartzell testified regarding the required "chronic joint pain and stiffness." With regard to the required "signs of limitation of motion or other abnormal motion of the affected joint(s)," decreased range of motion bilaterally is noted in some of his medical records, *see, e.g.*, *id.* at 241, and Hartzell testified that his knees sometimes "lock up." Hartzell also testified about the impact of his knee pain on his ability to walk, and the ALJ herself determined that he was limited to jobs in which he never needed to climb stairs.

In light of this evidence, the ALJ's failure to provide more than a perfunctory discussion of Listing 1.02(A) is not harmless. Nor is her failure to obtain a medical opinion on the issue.

> Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue. *See* 20 C.F.R. § 404.1526(b) ("Medical equivalence must be based on medical findings. . . . We will also consider the medical opinion given by one or more medical or psychological

6

>consultants designated by the Commissioner in deciding medical equivalence."); S.S.R. 96–6P at 3 ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."), *reinstating* S.S.R. 83–19; *see Farrell v. Sullivan,* 878 F.2d 985, 990 (7th Cir.1989) (concluding that ALJ complied with requirement of Social Security Ruling 83–19 that he consider a consulting physician's opinion regarding medical equivalency).

*Barnett v. Barnhart*, 381 F.3d 664, 670-71 (7th Cir. 2004) (cited in *Minnick*, 775 F.3d at 936). While this requirement most often is satisfied by the completion of an Agency form by a physician who has reviewed the claimant's medical records, in this case the ALJ properly gave the state agency medical consultant's opinion little weight, as it was completed without the benefit of the September 2012 x-ray and therefore was not based on the record as a whole. Accordingly, remand is required for the ALJ to reevaluate whether Hartzell's condition meets or equals Listing 1.02(A) after obtaining a medical opinion on the issue.

Hartzell also argues that the ALJ's RFC determination is faulty because it contains a sit/stand option but fails to specify how frequently he needs to alternate between sitting and standing. The Court agrees.

>An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. *The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.* It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9P (emphasis added). The ALJ's hypothetical questions to the vocational expert include the general requirement of work "that would allow them to sit or stand alternatively," without specifying how often. Perhaps the ALJ meant and the vocational expert understood that Hartzell

would need the ability to do so at will, but it is impossible to tell from the record.  This should be corrected on remand.

Finally, Hartzell takes issue with the ALJ's finding that he would be off task 5% of each work day, but not 10% of each work day.  Hartzell does not point to any evidence that would support the latter finding; accordingly, he has not demonstrated that the ALJ's finding was erroneous.

## VI.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 9/15/15

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification